U.S. District Court. Dist. of Conn 9.7.06

Tyrone Grant. v. Progressive Ins. Co. M.H. Chodos Ins Agency

U.S. Magistrate Judge D. Martinez. Judge A. Thompson] 301cv935 [AWT

Tyrone Grant Acting prose. Files this motion] Pursuant to 28 USCA 1361] writ of mandamus Returnes this decision back to this Court] Now Pursuant to. Rule 52(B) Reconsiderations] Filed Plaintiff moves the court to Amend Its decision A court Action to correct. this [Substantive mistake] In this decision where case dismised menefest Error of Law] And Fact]. Fed. Rules of civil Proc. Rule 59(E) Interveining case Law] citing Green. v. Welsh. 956. F2d 30] (2nd cir) 1992] * this compelling condition precedent. Existed All this time As A matter of Law the U.S. District Court [must Adhear to this precedent And vacate Its decision * Against Plaintiff Tyrone Grant.] And Rule In his Favor of sum certain * 950.000.00. 524(E) Permits Plaintiff to Proceed Against discharged debtor Solely to Recover From debtor's Insurer Bank R Code 11 USCA [524] * Plaintiff moves district. court Pursuant to 28 USCA 1297] For the Excution * And Retention of sum certain 950.000.00] With Interest] to this date. This written Demand Is Now upon defendants the Progressive Ins Co. M.H. Chodos. Ins. Agency] to directly Pay Tyrone Grant As A matter of Law citing Law of case April 7 1996] As Per L Corey - As Per Freedman] In Favor of Ty-Grant, Alleged Plaintiff third Party Beneficiary under Progressive Ins Policy] Subsequently A duty Is owed * 38A-321 Liability of Insurer under Liability Policy. Cited *



Concealed ... Bank R Fraud ... Violation

Bank R Act 17A(2) section 35A(2) of Former title 11 Comes Into Play

Judicial Notice * Creditor Had A Right to Payment 11 USC 101(4)(A) *

Independant Right Exist - And Violated

STATE OF CONNECTICUT

No. CV-94 0358105

TYRONE GRANT, of New Haven, Connecticut

v.

FOUNTAIN'S GARAGE, INC., of New Haven, Connecticut and ANDRE NESS, of New Haven, Connecticut

: SUPERIOR COURT

: JUDICIAL DISTRICT
: OF NEW HAVEN
: AT NEW HAVEN

: June 13, 1995

Present: Hon. Howard F. Zoarski, Senior Judge

SUPPLEMENTAL JUDGMENT

This action came before the Court (Mulvey, STR) on March 28, 1995, and it was adjudged that the plaintiff, Tyrone Grant, recover of the defendants, Fountain's Garage, Inc. and Andre Ness, the sum of $950,000.00. This action came thence to April 18, 1995, when the plaintiff filed a bill of costs; thence to May 4, 1995, when the Court ordered costs taxed; thence to May 3, 1995, when a property execution filed by the plaintiff against the defendant Fountain's Garage was issued; thence to May 26, 1995, when the defendant, Fountain's Garage, filed a motion to set aside the judgment; thence to the present time, when the plaintiff filed an objection to the motion to set aside the judgment, and when the parties appeared and were heard on the motion to set aside the judgment.

Part of Bank R Case

When Scott ZN Jail

* The Court, after hearing the parties, finds for the plaintiff, Tyrone Grant, as against the defendant Fountain's Garage.

* 28 USC 1291 *

Attachment of Property of defendant Give Court Jurisdiction

Subject: An earlier decision... [court denied the insurer's motion for summary judgment]
Date: Aug 11, 2004 5:27 PM

TYRONE GRANT v. CITY OF NEW HAVEN, ET AL

NO. CV96-0382068

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF NEW HAVEN, AT NEW HAVEN

1996 Conn. Super. LEXIS 2178

August 12, 1996, Decided
August 15, 1996, FILED

NOTICE: [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

CASE SUMMARY

PROCEDURAL POSTURE: Defendant insurer moved for summary judgment against plaintiff in a case in which plaintiff claimed that the insurer owed him a duty of care as a third party beneficiary under the insurer's policy.

OVERVIEW: The insurer provided coverage to its insured that was allegedly inconsistent with the requirements set forth by the city. Subsequently, the insurer denied plaintiff compensation for his injuries, a result that might not have occurred had the insured possessed the correct coverage. Subsequently, plaintiff filed suit and the insurer moved for summary judgment, arguing that it did not owe a duty to plaintiff. The court denied the motion, finding that there was a genuine issue of material fact as to whether plaintiff was a third party beneficiary under the insurance policy and whether the insurer owed a duty to plaintiff. Subsequently, the insurer filed a second motion for summary judgment, claiming that the statute of limitations had run on plaintiff's claim. The court noted that if the parties were in a special relationship giving rise to a continuing duty, then the continuing course of conduct doctrine might apply to the limitations period. Because a full trial was needed to explore the parties' relationships, the court denied the motion.

OUTCOME: The court denied the insurer's motion for summary judgment.

JUDGES: Samuel S. Freedman, Judge

OPINIONBY: Samuel S. Freedman

EARlid
2WY- M LINCH (Examined)

Whereupon, it is adjudged that the motion to set aside the judgment should be, and it is, denied.

By the Court,

Hon. Howard F. Zoarski
Senior Judge

OPINION: MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT # 111

The defendant, Progressive Casualty Insurance Company, argues that the court should grant its motion for summary judgment because the statute of limitations has run on the plaintiff's claims. On February 13, 1996, the defendant filed a prior motion for summary judgment arguing that Progressive never owed a duty to the plaintiff. On April 7, 1996, Judge Gray denied Progressive's motion for summary judgment on the grounds that a genuine issue of material fact exists as to whether the plaintiff was a third party beneficiary under Progressive's policy, and * subsequently, whether the defendant owed a duty to the plaintiff. That is the law of the case. * Since a genuine issue of material fact exists as to the plaintiff's relationship with the defendant and whether the defendant owed a duty to the plaintiff, a genuine issue of material fact exists as to the extent of that relationship [*2] and duration of that duty. If the parties were in a special relationship giving rise to a continuing duty, then the continuing course of conduct doctrine may apply to the limitations period. See Connell v. Colwell, 214 Conn. 242, 254-55, 571 A.2d 116 (1990) (holding that HN1"a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act" may toll the statute of limitations.) The parties did not argue or brief this issue, and the court is not convinced, at this stage of the proceedings, that the defendant is entitled to judgment as a matter of law.

This case concerns an insurance company that allegedly provided coverage to its insured that was inconsistent with requirements set forth by the City of New Haven. In the process, the company denied the third party compensation for his injuries, a result which might not have occurred had the insured possessed the correct coverage. This case involves complex and important public policy issues concerning insurance coverage and New Haven's desire to ensure that people injured within the city limits have avenues of recovery. HN2Summary judgment is "ill adapted [*3] to cases of a complex nature or to those involving important public issues, which often need the full exploration of trial." United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 375, 260 A.2d 596 (1969). Accordingly, this case should proceed to trial where these issues may be properly decided.

Samuel S. Freedman, Judge

11USC1014A Full Right to Payment Asserted

11USC1019A debt owed by defendants, Asserted

Judicial Notice Bankr Proceeding Are governed by the Federal Bankr Code and Rules Which Expressly Exempt Insurance Companies From their Purview
199 [235 BR 713

the Statutory Command for Notice Embodies A basic Principle of Justice] that A Reasonable opportunity to be Heard must precede A Judicial denial of A Party's Claimed Rights [2 96-97, 73 S.Ct. 301]

s A matter of due Process] Person Entitlement to money] From debtor will be destroyed by the judgment Is Entitled to Notice] from both Courts] 1141-01(b) this Law of Case] Action [Fraudulent ly] Concealed *

Central Station, but we have a great time. We do good math in here," Crotty said.

It's like this every Wednesday afternoon in Crotty's class, where about 50 middle school students from across the city have spent the past 10 weeks preparing for Saturday's regional round of MATHCOUNTS, an annual math contest for more than 350,000 students nationwide.

the city's mostly minority students role models for academic achievement.

"In our school, we've got nine students in advanced placement calculus and eight are minority kids and, to me, that's very important," Crotty said. "That's a major thing: I want these middle school kids to know that they can excel in math, too."

Crystal Astrachan, a 14-year- ... last year and it's still helping me in class now."

Sharnlia Solomon, a 17-year-old Career senior, says the math drills she puts her young charges through often stump her.

"This math is *hard*," Solomon said. "As you go further up and up in math, you forget some of this stuff."

If the New Haven team gets through the regional contest, it will compete in a statewide com- ... said, "but everyone gets so excited about it here, I sort of like it now."

Jermell Mitchell, a 16-year-old Career senior, wishes there had been a similar program when he was in middle school. The experience, he said, has him thinking of becoming a math teacher.

"I really like working with the kids," Mitchell said. "I'm learning off them and they're learning off me."

Yale-New Haven ... el's hospitals ... ioactive material entering ... er system from those insti... either meets or falls well below all health and safety standards and poses no health risk.

No action was taken by the aldermanic Legislation Committee, which held the hearings. Environmentalists want the city and industry to use "ecological engineering" to naturally and safely break down sludge without chemicals or burning.

# Court makes city man rich, if he ever gets his money

By Josh Kovner
Register Staff

NEW HAVEN — Tyrone Grant has learned that it's one thing to win a $950,000 court judgment against a towing outfit after being bashed with a baseball bat, but that it's quite another thing to collect it.

State Trial Referee Harold M. Mulvey in March 1995 found Fountain's garage liable for the injuries Grant said he sustained when he went to the Stiles Street business to reclaim his car, which had been towed for violations.

Grant, 36, who lives on Orchard Street, said he was assaulted with a bat by Andre Ness, a garage employee.

But despite the court ruling, he's yet to see a nickel.

Fountain's — one of 10 garages under contract to tow for the New Haven police — declared bankruptcy after the judgment.

Since then, Grant has been arrested for allegedly pestering city lawyers for his money.

"He's depressed," said his attorney, W. Martyn Philpot Jr. "He's suffered a 60-stitch cut and the side of his head is numb. He went to court and won a judgment. Now he feels steamrollered by the system."

Grant recently sued the city and Fountain's insurance company, but both deny any responsibility. A trial on that case is still months away.

"Mr. Grant may have the most genuine of claims — but not against the city," said Deputy Corporation Counsel Patricia Co-francesco. She's been visited several times by Grant at her City Hall office.

The garage is on call with nine other towing outfits to hook cars that are damaged in accidents or ticketed by New Haven police.

Grant's ordeal began when police tagged his unregisterd 1980 Buick Skylark.

In court papers, Grant said he walked to Fountain's lot in the dead of night on June 22, 1992, looked around for an attendant, saw no one, and started driving out.

He claims Ness appeared, attacked the car with a bat and then attacked him.

Ness told city police that Grant tried to assault him. Both men were arrested, but prosecutors opted not to pursue the cases.

"He didn't tell you that he tried to run over Ness and crash through the gate, did he?" said Joseph Wilkinson, owner of Fountain's, who disputes Grant's version.

Judge Mulvey rendered the $950,000 judgment after finding Fountain's in default for not showing up in court and presenting a defense.

Wilkinson disputes this. He's hired attorney Edwin Doernberger to appeal the judgment and handle the bankruptcy.

"Fountain's has never been given its day in court," Wilkinson said.

## Man, woman found dead in motel room

ENFIELD (AP) — A man and a woman were found shot in a motel room Sunday in what appeared to be a murder-suicide, police said.

The woman was dead when police were called to the scene about 10:30 a.m., Lt. Anjo Timmerman said. The man was taken to Bay State Medical Center in Springfield, Mass., where he was pronounced dead, police said.

Both victims appeared to be in their 50s. Their names were not being released until next of kin were notified.

The man was living at the hotel, according to televised news ...

# Colleges put heat on brightest students

### Yale, Princeton join Ivies in early-admissions policy

By Patrick Dilger
Register Staff

NEW HAVEN — The competition among selective colleges to secure the best students has stepped up a notch with the move by Yale and Princeton to binding early-admissions policy.

The program, now in place at all but two Ivy League schools, requires any student who applies early — with applications usually due by Nov. 1 — to promise to attend that school if admitted. Students may also only make one of these "early decision" applications.

which regularly sends a crop of freshmen to the Ivies.

Yale has accepted 415 — or 38 percent — of the 1,095 early-decision applications it received. The school also saw its early applications drop off 30 percent, thanks to the change to a binding policy.

But admissions officials said they were happy with the new policy, because it ensured a crop of students who were making Yale their clear-cut first choice.

"Also, you're not going to have 100 kids who opt not to come, and that gives you more flexibility during the regular cycle (by opening up more slots)," said Richard Shaw, Yale's dean of undergraduate admissions.

Most students also like the idea of applying early and having an acceptance locked ...

policies are putting additional pressure on high school students to pick their college the first week of their senior year in what should be a longer, more thoughtful process. Some students' views may have changed radically by spring, when admissions notices are sent out for those who apply through the regular process.

On the other hand, "If a student ... his homework and knows ... can make life a lot easier ... sewn up early," Paton said.

Early-admissions programs ... created by hundreds of colleges ... 20 years to simplify the ... for students certain of where ... go.

Under binding admi...

tor with unliquidated claim received discharge of all scheduled claims, tort claimant moved in state court to continue negligence action, debtors moved in bankruptcy court for enforcement of permanent injunction, and tort claimant cross-moved in bankruptcy court for modification of injunction pursuant to statute governing effect of discharge that protects debtor from any personal liability on debt. The Bankruptcy Court, Edward D. Hayes, J., denied tort claimant's cross motion and held that discharge injunction barred tort claimant from maintaining her negligence action. On appeal, the United States District Court for the Western District of New York, Michael A. Telesca, Chief Judge, vacated that order and held that discharge did not operate to enjoin tort claimant from resuming negligence suit, insofar as that action remained confined to obtaining judgment to be paid by debtors' liability insurer. The Court of Appeals, Oakes, Chief Judge, held that: (1) statute governing effect of discharge permits plaintiff to proceed against discharged debtor solely to recover from debtor's insurer; (2) tort claimant would be permitted to continue her suit against debtors who had received Chapter 7 discharge without being required to obtain modification of discharge injunction, but only to prove liability as prerequisite to recovery from debtors' liability insurer; and (3) neither res judicata nor collateral estoppel precluded resumption of tort claimant's suit after Chapter 7 debtors received discharge, even though tort claimant had failed to appeal bankruptcy court discharge order and bankruptcy court order denying tort claimant's erroneous postdischarge request for relief from stay.

Affirmed.

**1. Bankruptcy** ⟹2364, 2437

Tort claimant's motion after debtors received Chapter 7 discharge for relief from automatic stay was improper; discharge had extinguished stay and replaced it with permanent injunction protecting debtor from any personal liability on debt. Bankr.Code, 11 U.S.C.A. §§ 362(c)(2)(C), 524(a), 727.

**2. Bankruptcy** ⟹3411

Congress through statute providing for Chapter 7 discharge and through statute governing effect of discharge sought to free debtor of personal obligations while ensuring that no one else reaped similar benefit. Bankr.Code, 11 U.S.C.A. §§ 524, 727.

**3. Bankruptcy** ⟹3412

Senate report's statement, that provision that discharge of debt does not affect liability of any other entity on, or property of any other entity for, such debt provides that discharge of debtor does not affect codebtors or guarantors, represents nonexhaustive description of the most common types of third parties to which the provision applies and does not preclude application of that provision to third parties who might be indirectly liable to plaintiff, such as debtor's liability insurer. Bankr.Code, 11 U.S.C.A. § 524(e).

**4. Bankruptcy** ⟹3412

Statute governing effect of discharge permits plaintiff to proceed against discharged debtor solely to recover from debtor's insurer. Bankr.Code, 11 U.S.C.A. § 524.

**5. Bankruptcy** ⟹2364

Tort claimant would be permitted to continue her suit against debtors who had received Chapter 7 discharge without being required to obtain modification of discharge injunction, but only to prove liability as prerequisite to recovery from debtors' liability insurer; delay of approximately eight months between time that bankruptcy court issued discharge order and motion seeking modification of injunction should not forever bar tort claimant from continuing suit, where that delay had resulted in no prejudice to debtor or insurer. Bankr. Code, 11 U.S.C.A. § 524.

**6. Judgment** ⟹829(3)

Neither res judicata nor collateral estoppel precluded resumption of tort claimant's suit in state court after Chapter 7 debtors received discharge, even though tort claimant had failed to appeal bankruptcy court discharge order and bankruptcy

BankR Judge A Dabrowski can(not) exercise his power In contravention of the BankR Code [25 F3d 1132] but In error [And corruption he has] [982 F2d 721] 2d Cir 92

court order denying tort claimant's erroneous postdischarge request for relief from stay; scope of statute governing effect of discharge did not extend to suit against debtors maintained to recover from their insurer, and order denying relief from stay similarly involved no determination of right to continue tort claimant's suit. Bankr. Code, 11 U.S.C.A. § 524.

---

Francis L. Gorman, III, Rochester, N.Y. (Dennis R. McCoy, Saperston & Day, P.C., of counsel), for defendants-appellants.

John A. Bryant, Rochester, N.Y. (Faraci, Guadagnino, Lange & Johns, of counsel), for plaintiff-appellee.

Before OAKES, Chief Judge, NEWMAN and PRATT, Circuit Judges.

OAKES, Chief Judge:

William and Ann Welsh appeal the judgment of the United States District Court for the Western District of New York, Michael A. Telesca, *Chief Judge*, vacating an order of the bankruptcy court. The bankruptcy court, Edward D. Hayes, *Bankruptcy Court Judge*, enjoined appellee Maxine Green from prosecuting her tort claims against the Welshes on account of the discharge of indebtedness received by the Welshes under Chapter 7 of the Bankruptcy Act, 11 U.S.C. § 727 (1988). The district court, in vacating the bankruptcy court order, held that Green could resume her suit against the Welshes as long as it was directed only at obtaining a judgment to be paid by the Welshes' liability insurer. Because continuation of Green's suit is permitted by 11 U.S.C. § 524 (1988) and would not jeopardize the Welshes' ability to get a fresh start, we affirm.

FACTS

In 1988, Maxine Green brought a negligence suit, individually and on behalf of her children, in New York State Supreme Court to recover for injuries resulting from a fire at the apartment she rented from William and Ann Welsh. The claims against the Welshes are covered by their liability insurance policy of $1 million. On January 26, 1990, the Welshes filed a petition under Chapter 7 which automatically stayed Green's state court action. *See* 11 U.S.C. § 362(a)(1) (1988).

The Welshes filed a schedule of liabilities with the bankruptcy court which listed Green as an unsecured creditor with an unliquidated claim. Green could have, but did not, attempt to obtain relief from the automatic stay to pursue her tort claims up to the liability policy limit. In May 1990, the bankruptcy court granted the Welshes a discharge of all scheduled claims, pursuant to 11 U.S.C. § 727 (1988).

[1] Green did not seek exclusion of her claim from the discharge. However, in August 1990, in an effort to resume her state court action, Green filed a motion in the bankruptcy court for relief from the automatic stay. The bankruptcy court denied the motion. As Green now concedes, her motion was improper because the discharge had extinguished the stay, see 11 U.S.C. § 362(c)(2)(C) (1988), and replaced it with a permanent injunction under 11 U.S.C. § 524(a) (1988).

Thereafter, in September 1990, Green moved in New York State Supreme Court to continue her negligence action. In response, the Welshes moved the bankruptcy court for enforcement of the permanent injunction. Green then cross-moved in bankruptcy court for modification of the § 524(a) injunction, if the court deemed it appropriate, to enable her to obtain a state court determination of the insurance company's liability. The bankruptcy judge denied Green's cross-motion, found that Green's tort claim had been discharged, and ordered that the § 524(a) injunction barred Green from maintaining her negligence action.

On appeal, the district court vacated the order of the bankruptcy court and held that, pursuant to § 524, the discharge under § 727 did not operate to enjoin Green from resuming her negligence suit, insofar as that action remained confined to obtaining a judgment to be paid by the Welsh's liability insurer.

DISCUSSION

A. The Scope of § 524

The Welshes first argue that the district court erroneously interpreted 11 U.S.C. § 524 to allow Green to continue her negligence suit in state court. The Welshes cite legislative history and some case law in support of their view that a discharge of a properly scheduled claim should bar resumption of a suit designed only to establish liability as a predicate to recovery from the debtor's insurer. However, the relevant provisions of § 524, the purpose of the Bankruptcy Code, and the vast majority of cases in the bankruptcy courts that have considered this issue show that the district court properly allowed Green to maintain her suit.

[2, 3] The discharge of a debt pursuant to § 727 triggers the operation of § 524, which protects the debtor from any personal liability on the debt. As the district court noted, the relevant sections provide, in part:

> A discharge in a case under this title—
> (1) voids any judgment at any time obtained, *to the extent that such judgment is a determination of the personal liability of the debtor* with respect to any debt discharged ...;
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset *any such debt as a personal liability of the debtor....*

11 U.S.C. § 524(a) (1988) (emphasis added). The relief accorded the debtor by these provisions does not extend to other parties:

> Except as provided in subsection (a)(3) of this section, *discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.*

11 U.S.C. § 524(e) (1988) (emphasis added). Together, the language of these sections reveals that Congress sought to free the debtor of his personal obligations while ensuring that no one else reaps a similar benefit. *See* 3 R. Babitt et al., *Collier on Bankruptcy* ¶ 524.01 at 524–16 (15th ed. 1991). The legislative history accords with this view. For example, the Senate Report explains that § 524 was designed "to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it." S.Rep. No. 989, 95th Cong., 2d Sess. 80–81 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5866.[1] The protection afforded by the discharge injunction thus furthers one of the primary purposes of the Bankruptcy Code—that the debtor have the opportunity to make a "financial 'fresh start.'" *In Re Jet Florida Systems, Inc.*, 883 F.2d 970, 972 (11th Cir.1989) (per curiam) (citing Thomas H. Jackson, *The Fresh-Start Policy in Bankruptcy Law*, 98 Harv.L.Rev. 1393, 1396–97 (1985)).

[4, 5] Numerous courts, confronted with a tort claimant who seeks to proceed against a discharged debtor only for the purpose of recovering against an insurer, have relied on §§ 524(a) and 524(e) and the fresh start policy in concluding that the discharge injunction does not bar such a suit. *See, e.g. In re Jet Florida Systems, Inc.*, 883 F.2d 970, 976 (11th Cir.1989) (section 524(e) permits a plaintiff to proceed against the debtor to establish liability as a prerequisite to recover from an insurer); *In re Greenway*, 126 B.R. 253, 255 (Bankr. E.D.Tex.1991) (discharge order does not bar continuation of state court action to determine liability of debtor solely as a prerequisite to recovery from debtor's insurance carrier); *In re Peterson*, 118 B.R. 801, 804 (Bankr.D.N.M.1990) (injunction provided by § 524 does not bar FDIC from establishing the liability of the debtor so as to proceed against bank employee insurer);

1. The Welshes argue that the Senate Report supports their view that § 524(e) does not permit Green to resume her suit, because it applies only to entities who are independently liable to the plaintiff. The Senate Report provides that "[s]ubsection (d) [sic] provides the discharge of the debtor does not affect co-debtors or guarantors." S.Rep. No. 989 at 81, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5867. We believe, however, that this wording represents a non-exhaustive description of the most common types of third parties to which § 524(e) applies and it in no way precludes the application of the section to third parties who may be indirectly liable to a plaintiff, such as the debtor's liability insurer.

*In re Traylor*, 94 B.R. 292, 293 (Bankr. E.D.N.Y.1989) (discharge does not release debtor's insurer from liability); *In re Lembke*, 93 B.R. 701, 702–03 (Bankr. D.N.D.1988) (section 524 injunction permits suit to recover from debtor's insurer); *In re White*, 73 B.R. 983, 984–86 (Bankr. D.D.C.1987) (injunction issued pursuant to debtor's discharge does not bar a lawsuit against the debtor that will affect only the assets of the debtor's insurer); *In re Mann*, 58 B.R. 953, 959 (Bankr.W.D.Va. 1986) (section 524 does not prohibit tort claimant from maintaining a pending suit against discharged debtor to effectuate recovery under claimant's uninsured motorist coverage). Some courts have reached the same result by modifying the injunction to permit the tort suit to continue. *See, e.g. In re Walker*, 927 F.2d 1138, 1142–44 (10th Cir.1991) (section 524(e) permits a creditor to bring a direct suit against the debtor where establishment of the debtor's liability is a prerequisite to recovery from a state fund); *In re Dorner*, 125 B.R. 198, 202 (Bankr.N.D.Ohio 1991) (modification of section 524 injunction appropriate to enable defendant in tort action to establish debtor's liability for purposes of setoff and apportionment); *In re McGraw*, 18 B.R. 140, 143 (Bankr.W.D.Wis.1982) (section 524 injunction can be modified to permit continuation of suit provided that creditors are enjoined from collecting any judgment from debtor). Yet other courts have applied similar reasoning in deciding to grant a tort claimant relief from the automatic stay. *See, e.g. In re Fernstrom Storage and Van Co.*, 938 F.2d 731 (7th Cir.1991); *Elliott v. Hardison*, 25 B.R. 305 (E.D.Va. 1982); *In re Honosky*, 6 B.R. 667 (Bankr. S.D.W.Va.1980).

One of these cases, *In re Jet*, merits further discussion because, even though the debtor sought protection under Chapter 11, the court's analysis is both persuasive and highly applicable to the resolution of this appeal.[2] A plaintiff who had sued the debtor for defamation failed to file a proof of claim with respect to his action prior to the bar date for filing proofs of claims. 883 F.2d at 972. The bankruptcy court subsequently issued a permanent injunction under § 524 and barred the plaintiff from continuing his suit. *Id.* On appeal, the district court found that the statutory language and purpose of the § 524(a) injunction, aimed at protecting the debtor, did not preclude a suit tailored solely to determining the debtor's liability as a precondition for recovery against the debtor's liability insurer. *Id.* at 973. The court then held that § 524(e)'s broadly worded limitation on the effect of discharge permitted the plaintiff to proceed against the debtor with such a suit. *Id.* at 976. In reaching this conclusion, the court emphasized that neither the "'fresh-start' policy" nor § 524 was designed to immunize "third parties such as insurers who may be liable on behalf of the debtor," and the insurer should not gain a benefit that had not figured in the calculation of the premium for the policy. *Id.* at 975 (footnote omitted). Finally, the court found it highly unlikely that the debtor would incur any expenses in defending the suit because the discharge left it free to default, thus compelling the insurer to pay the costs of litigation. *Id.* at 976. *In re Jet* and a host of other cases stand squarely in opposition to the Welshes' view of the scope of a section 524 injunction.

Appellants rely on *In re White Motor Credit*, 761 F.2d 270 (6th Cir.1985), where the court barred continuation of personal injury claims that would have been paid by the debtor's insurers. We believe, however, that our preceding discussion shows that the outcome mandated by *White Motor Credit* is supported by neither the text nor the intent of § 524. Moreover, as the court in *In re Jet* implied in rejecting the Sixth Circuit's view, the persuasiveness of *White Motor Credit* is undermined by the court's failure to support its decision with any analysis. *See In re Jet*, 883 F.2d at 973–74. The *White Motor Credit* court, without any countervailing purpose, de-

2. Note that the *In re Jet* court affirmed the judgment of the district court for the reasons set forth in the district court's opinion. Accordingly, the following references are to the district court's opinion as incorporated by the appellate court.

prived the personal injury plaintiffs of a significant right by denying them the opportunity to litigate the issue of liability. *See In re Mann,* 58 B.R. at 959. For these reasons, we decline to follow its holding.

The Welshes also contend that the case of *Freed v. Braniff Airways, Inc.,* 119 F.R.D. 10 (S.D.N.Y.1987), compels reversal of the district court. In *Freed,* the plaintiff brought tort claims in district court against the debtor. *Id.* In an earlier Chapter 11 proceeding, however, a bankruptcy court in Texas had specifically barred all of the plaintiff's claims against the debtor. *In re Braniff Airways, Inc.,* 1986 WL 20577 (Bankr.N.D.Tex.1986). The district court held that the bankruptcy court's holding collaterally estopped the plaintiff's claims. *Freed,* 119 F.R.D. at 10–11. The district court never reached the merits of whether 11 U.S.C. § 524 barred the plaintiff's claims against the debtor's insurer. Further, the case differs from the facts at issue here because apparently the *Freed* plaintiff never appealed the determination of the Texas bankruptcy court, deciding instead to assert her claims in district court despite the earlier bankruptcy proceeding. In this case, Green appealed the bankruptcy court's order, denying her cross-motion for modification of the § 524 injunction, to the district court. Thus, *Freed* does not provide compelling authority for barring Green from continuing her suit.

Thus, notwithstanding *White Motor Credit* and *Freed,* we believe that § 524 permits a plaintiff to proceed against a discharged debtor solely to recover from the debtor's insurer. Applied here, this principle permits Green to continue her suit against the Welshes to establish liability as a precondition to recovery from the Welshes liability insurer.

Green did miss several opportunities to obtain the relief she ultimately sought through the motion for modification of the § 524 injunction that forms the basis of this appeal. Prior to discharge, Green could have sought to continue her suit by moving for relief from the automatic stay. Following discharge, Green could have appealed the discharge order, instead of erroneously moving for relief from the automatic stay. But we do not believe the delay of approximately eight months between the time the bankruptcy court issued the discharge order and her motion at issue here should forever bar her from continuing her suit, because this delay has resulted in no prejudice to the insurer or the debtor. *See In re Walker,* 927 F.2d 1138, 1143 (10th Cir.1991) (plaintiff may sue debtor solely to establish liability despite one-year delay in seeking relief from discharge injunction where, *inter alia,* debtor was not prejudiced by the delay); *see also In re Mann,* 58 B.R. at 955) (bankruptcy court permitted plaintiff to proceed against debtor to recover from debtor's insurer even though plaintiff moved for such relief ten months after debtor was granted a discharge). Therefore, we reject the Welshes' first claim.

B. Appellants' Remaining Claims

**[6]** The Welshes' remaining claims do not require extended discussion. They argue that the doctrines of *res judicata* and collateral estoppel require us to reverse the district court and bar resumption of Green's negligence action. They base this argument on Green's failure to appeal two orders of the bankruptcy court: the discharge order of May 1990 and the order of September 1990 denying Green relief from the automatic stay. The discharge order triggered the operation of section 524, which relieved the Welshes of personal liability on Green's tort claim. However, because the scope of section 524 does not extend to Green's suit against the Welshes to recover from their insurer, the discharge order never determined Green's ability to continue that suit. And the order denying Green relief from the automatic stay similarly involved no determination of Green's right to continue her suit, because at the time Green sought relief there existed no automatic stay from which relief could be granted. Thus, these claims must fail.

Finally, the Welshes argue that the bankruptcy court's denial of Green's cross-motion for modification of the discharge injunction was not an abuse of discretion, and thus the district court erred in vacating

the bankruptcy court's order. However, as our discussion of the scope of the section 524 injunction indicates, we believe that the bankruptcy court misinterpreted the effect of discharge and the district court properly vacated the bankruptcy court's order. Accordingly, this claim is meritless.

IV

In sum, we find that the discharge injunction under §§ 524(a) and 524(e) permits Green to continue her suit against the Welshes, without requiring her to obtain a modification of the injunction, but only to prove liability as a prerequisite to recovery from the Welsh's liability insurer. Green remains barred from proceeding against the Welshes personally to collect any judgment awarded as a result of her suit.

Affirmed.

**James W. MENSH, Bennie P. Mensh, Plaintiffs–Appellees,**

v.

**R.A. DYER, M.G. Tsoleas, Jr., C.M. Chidester, Jr., Defendants–Appellants,**

**and**

**Ted Banholzer, Gerald C. Fayed, Defendants.**

**No. 90–2913.**

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1991.

Decided Nov. 21, 1991.

Amended by Order Jan. 13, 1992.

Homeowner who was roused from sleep and detained by arrest team that had warrant for homeowner's son brought civil rights action against state police officers and one FBI agent. The United States District Court for the Western District of Virginia, Jackson L. Kiser, J., denied state officers' motion for summary judgment and state appealed. The Court of Appeals, Staker, District Judge, sitting by designation, held that officers were entitled to qualified immunity on claims of lack of probable cause, failure to knock and announce, and use of excessive force.

Reversed.

Frank A. Kaufman, Senior District Judge, sitting by designation, filed dissenting opinion.

**1. Civil Rights ⟹211**

"Qualified immunity" in civil rights action is entitlement not to stand trial or face other burdens of litigation and is essentially irreclaimable once cause is allowed to go to trial.

See publication Words and Phrases for other judicial constructions and definitions.

**2. Federal Courts ⟹595**

Denial of motion for summary judgment based on claim of qualified immunity is a "final decision" for purposes of appellate review.

See publication Words and Phrases for other judicial constructions and definitions.

**3. Civil Rights ⟹214(6)**

State police officers are entitled to summary judgment on ground of qualified immunity in civil rights action if they can establish that reasonable officers could have believed that their actions were lawful in light of both clearly established law and information officers possessed at time of acts in question.

**4. Civil Rights ⟹214(6)**

Court determining whether police officers are entitled to qualified immunity in civil rights action inquires into objective legal reasonableness of officers' actions, not into officers' subjective beliefs.

**5. Arrest ⟹63.4(1)**

Arrest based on probable cause does not violate Fourth Amendment even if

# Certification

this IS to Certify that A Copy of the Foregoing demand IS mailed Postage Prepaid this date. to Louis S. Lerman Esq. )Genovese, D'Attelo + Lerman. 195 Scott Swamp Rd Farmington Ct 06034-4053] defendant M.A. Chodos INS Agency 27 trumble St New Haven Ct 06511

2) the Progressive INS. Co. 6300. Wilson mills Rd N72 mayfield village OH. 44143- Attorney-Scott. R. Gold - tel (440) 461-5000.

Law office Cesar Noble Esq.] Young. And OConnor 970 Farmington AVE West Hartford ct 06107

the U.S. District Court. 450. Main St Hartford ct [3:01cv935 (AWT) Hon Judge D. Martinez. Judge A. thompson Fully Notified of demand

Certificate of service Prose. [signature] 191 Whalley AVE Suite 181 New Haven ct 06511

thank you. Sincerely I Remain [signature] 9.7.06

OSborn CC Po box 100-Somers ct 06071 — #109727-E9